UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GABRIEL PINEIDA,

    Plaintiff,

v.

CHARLES D. LEE, et al.,

    Defendants.

Case No. 12-cv-01171-JST

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT; DENYING MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE**

Re: ECF No. 64, 86.

In this action alleging violation of Plaintiff Gabriel Pineida's Eighth Amendment rights, Pineida moves for leave to amend his complaint to add four new defendants and to add a claim alleging the violation of his First Amendment rights. The motion is opposed by the six original defendants as well as the four newly proposed defendants. The matter came for hearing on June 26, 2014.

**I.    BACKGROUND**

    **A.    Procedural History**

Defendants R.T.C. Grounds, Charles Lee, Kathleen Wall, R. Rodriguez, Eloy Medina, Michael Sepulveda, Carl Millner, Brian Wilson, Anise Adams, and Darren Bright (collectively, "Defendants") are or were allegedly employed at Salinas Valley State Prison ("SVSP"). Proposed Second Amended Complaint ("PSAC") ¶¶ 8-17, Exh. A to Declaration of Todd R. Gregorian, ECF No. 86-1. This action arises out of their alleged continuous mistreatment of Pineida during his incarceration at SVSP beginning in 2005. Id. ¶¶ 37-80.

Plaintiff filed his original complaint *pro se* on March 8, 2012, alleging that various SVSP employees were deliberately indifferent to his ulcerative colitis condition, in violation of his Eighth Amendment rights. Complaint by a Prisoner under the Civil Rights Act, 42 U.S.C. § 1983

("Complaint"), ECF Nos. 1 & 1-1. The initial complaint named identified Lee, Wall, Rodriguez, Medina, Sepulveda, and Millner as defendants as well as then-SVSP Warden E. Evans (collectively, "Original Defendants"). ECF No. 1 at ECF Page No. 1.

In June 2013, the court granted in part and denied in part a motion to dismiss brought by the then-named and served defendants. Order Granting in Part and Denying in Part Defendants' Motion to Dismiss; Dismissing Unserved Defendant; Staying Action and Referring to Settlement; Directions to Clerk ("June 2013 Order"), ECF No. 42. In that order, the court (1) held that "claims against defendants in their official capacities are dismissed with prejudice," (2) dismissed the claims against then-Warden Evans with prejudice because the complaint failed to allege sufficient facts to state a claim against him, and (3) dismissed the claims against Defendant Dr. Millner without prejudice pursuant to Rule 4(m) since Plaintiff had failed to serve him. Id. Defendants' motion to dismiss was denied insofar as it sought to dismiss other claims against other defendants. Id.

In September 2013, Plaintiff filed a "Motion for Leave to File an Amended Complaint," ECF No. 59, and concurrently submitted a document labeled "First Amended Complaint," ECF No. 60. The sole basis for Plaintiff's request for leave to file an amended complaint was to re-assert his claims against Defendant Millner. ECF No. 59. Therefore, the court "construe[d] the motion as a request for the Court to locate and serve Dr. Millner." Order Granting Plaintiff's Request to Locate Unserved Defendant; Denying Plaintiff's Second Motion for Appointment to Counsel; Directions to Clerk ("October 2013 Order"), ECF No. 62. By order dated October 23, 2013, the court ordered requested that the SVSP Litigation Coordinator forward any address information for Defendant Millner to the court under seal. Id. The October 2013 order stated specifically that "Plaintiff's original complaint (Dkt. No. 1) remains the operative complaint herein." Id.[1]

---

[1] Notwithstanding this statement, all parties in this case incorrectly refer to the "First Amended Complaint" as the operative complaint in this action. The court has compared Plaintiff's initial complaint (ECF Nos. 1 & 1-1) and the "First Amended Complaint" at ECF No. 60. They appear to be substantially the same document. The court observes only four potentially material differences: (1) Plaintiff lists different appeal numbers in his "exhaustion" section (compare ECF

2

In December 3, 2013, Defendants filed a motion for summary judgment. ECF No. 64. The court appointed Pineida *pro bono* counsel on December 16, 2013. ECF No. 74. Since Plaintiff's new counsel indicated they would file a motion to amend the complaint, the parties agreed that the motion for leave to amend should be resolved before a further summary judgment schedule is set. Joint Case Management Statement at 3, ECF No. 80.

A subsequent scheduling order issued on March 10, 2014 set a deadline for motions to add parties and amend. ECF No. 82. Pineida then timely filed the present motion. ECF No. 86. On March 19, Plaintiff filed a certificate of service indicating that Defendant Millner was served on March 4. ECF No. 83.

**B.     Plaintiff's Claims and the Instant Motion**

In the operative complaint, Pineida stated that he suffers from ulcerative colitis, a painful condition that often requires surgery and can be fatal if left untreated. Complaint ¶¶ 12-13. Defendants were allegedly made aware of Pineida's condition when it was confirmed via oral scope procedure in April 2005, yet allowed Pineida to suffer without a surgical procedure until May 2008. Id. ¶¶ 13, 39. This averred neglect, paired with a similar dearth of care after the first

---

No. 1 at ECF Page No. 2 with ECF No. 60 at ECF Page Nos. 1-2); (2) the "First Amended Complaint" does not list Warden Evans as a defendant (compare ECF No. 1 at ECF Page No. 1 with ECF No. 60 at ECF Page No. 2); (3) the "First Amended Complaint" contains a more detailed prayer for relief than the initial complaint, adding a request for a declaratory judgment, punitive damages and costs of suit (compare ECF No. 1 at ECF Page No. 4 with ECF No. 60 at ECF Page Nos. 25-26); and (4) a single handwritten page within the body of the initial complaint contains slightly different text than the corresponding typewritten page in the "First Amended Complaint" (compare ECF No. 1-1 at ECF Page No. 7 with ECF No. 60 at ECF Page No. 11, ¶¶ 21-23). Since the parties appear to agree on which appeals Plaintiff has filed, the court does not understand the first distinction to be material. The second distinction also is not material because Defendant Evans has already been dismissed with prejudice. Because of the third distinction, granting the instant motion to amend would have the effect of allowing those requests for relief to be added to the operative complaint for the first time, but the court does not understand Defendants to dispute that Plaintiff may add such prayers for relief. As for the fourth distinction, none of the changes to the text appear to be relevant to the present motion. Other than these changes, the "First Amended Complaint" only differs in that Plaintiff has added paragraph numbers to the allegations of his complaint. Since it is helpful to use paragraph numbers, the court will refer to the paragraph numbers used in ECF No. 60 when citing to the operative complaint, since, with the exception of paragraphs ¶¶ 21-23, the numbers in ECF No. 60 refer to the same text used in the operative complaint.

3

surgery (including a delay in granting a second surgery), forms the basis of Plaintiff's deliberate indifference cause of action. Id. ¶¶ 65, 69.

Pineida now moves to amend the complaint to add Grounds, Wilson, Adams, and Bright ("Proposed Defendants"). Motion for Leave to Amend ("Mot.") at 3, ECF No. 86. All four of these new defendants took their positions at SVSP after Plaintiff filed the original complaint in 2012, and the new defendants are alleged to have joined the previously named defendants in their deliberate indifference towards Mr. Pineida's medical needs. Id. at 4. The proposed amended complaint also adds a First Amendment cause of action alleging that the Defendants' misconduct was motivated by a desire to retaliate against Pineida for the complaints and litigation Pineida filed against them. PSAC ¶ 89. The PSAC also again names Millner as a Defendant, which the court construes as a request to add Millner back to the complaint after dismissal, now that he has apparently been served. See Mot. at 10, n. 3.

All of the Original Defendants, except for Evans and Millner -- Lee, Medina, Rodriguez, Sepulveda and Wall (collectively, the "Appearing Defendants") -- have filed an opposition brief.[2] Defendants' Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint ("Opp."), ECF No. 87.

C. **Jurisdiction**

Plaintiff brings a claim pursuant to 42 U.S.C. § 1983, which gives this court jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

D. **Legal Standard**

Federal Rule of Civil Procedure 15(a) permits a party to amend a pleading once "as a matter of course" within 21 days of serving it or within 21 days after a response to it has been filed. Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). A district court "should freely give leave" to amend a pleading "when justice so requires." Id. "Four factors are commonly used to determine the propriety of a motion for leave to amend. These are: bad faith, undue delay, prejudice to the

---

[2] Defendant Medina has subsequently been dismissed by stipulation of the parties. ECF Nos. 95 & 97.

opposing party, and futility of amendment." DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987) (citation omitted). "Not all of the factors merit equal weight . . . it is the consideration of prejudice to the opposing party that carries the greatest weight." Eminence Capital LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003)." The party opposing amendment bears the burden of showing prejudice." DCD Programs, 833 F.2d at 187. Generally, a court must make the determination of whether to grant leave "with all inferences in favor of granting the motion." Griggs v. Pace Am. Grp., Inc., 170 F.3d 877, 880 (9th Cir. 1999).

## II. ANALYSIS

The Appearing Defendants oppose the motion for leave to amend, arguing that the proposed amendment would be futile, cause undue delay, and be prejudicial to the Original Defendants. Opp. at 1, 15. The Appearing Defendants do not allege bad faith. They also argue that the joinder of parties and claims contemplated in the PSAC is improper under Rule 20 of the Federal Rules of Civil Procedure, and argue that certain allegations in the PSAC should be stricken under Rule 12(f). The court addresses each of the Defendants' arguments in turn.

### A. Prejudice

Original Defendants claim that allowing Pineida to amend his complaint would create undue prejudice. Mot. at 16.

"Prejudice is the touchstone of the inquiry under rule 15(a)." Eminence Capital, 316 F.3d at 1052 (citation and internal quotation marks omitted). Undue prejudice may be established where "a motion to amend was made after the cutoff date for such motions, or when discovery had closed or was about to close." Dept' of Fair Empl. & Hous. v. Law Sch. Admission Council, Inc. ("LSAC"), No. 12-cv-1830 EMC, 2013 WL 485830, at *5 (N.D. Cal. 2013) (citing cases); see also Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 986 (9th Cir.1999) ("A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend").

Even then, however, a finding of prejudice is not automatic but dependent upon a party's ability to articulate *why* a late amendment is prejudicial. Allen v. Bayshore Mall, Case No. 12-cv-02368-JST, 2013 WL 6441504, at *4-5. "The adverse party's burden of undertaking discovery,

5

standing alone, does not suffice to warrant denial of a motion to amend a pleading." U.S. ex rel Maritime Admin. v. Cont'l Illinois Nat. Bank & Trust Co. of Chicago, 889 F.2d 1248, 1255 (2d Cir. 1989); accord Stearns v. Select Comfort Retail Corp., 763 F. Supp. 2d 1128, 1158 (N.D. Cal. 2010). Moreover, the "mere addition of new claims in motion for leave to amend insufficient to support denial under Rule 15." LSAC, 2013 WL 485830, at *5 (citing United States v. Webb, 655 F.2d 977, 980 (9th Cir. 1981)).

Here, the Appearing Defendants base their claim of prejudice upon (1) the addition of another cause of action, (2) the fact that the Appearing Defendants have already filed a motion for summary judgment; and (3) the need for an extension of time in the schedule to conduct discovery. Mot. at 16-17.

Pineida's motion for leave to amend was expressly contemplated by the court's scheduling order. The Appearing Defendants' generalized claim -- that it is prejudicial to defend a new second cause of action while at the same time enduring an attendant increase in discovery -- is unsupported by case law and inconsistent with the Ninth Circuit's admonition that leave to amend should be granted liberally. Eminence Capital, 316 F.3d at 1051. Finally, Defendants cite no authority suggesting that the existence of a pending motion for summary judgment renders a motion for leave to amend inherently prejudicial. See Phoenix Solutions, Inc. v. Sony Elecs., Inc., 637 F. Supp. 2d 683, 692 (N.D. Cal. 2009) ("Federal Rule of Civil Procedure 15 permits amendments to add new claims even when a motion for summary judgment is pending"). In fact, Rule 15 explicitly contemplates allowing the amendment of pleadings as late as during trial. Fed. R. Civ. Pro. 15(b)(2). The Appearing Defendants have failed to show that allowing Pineida to amend his complaint would constitute unfair prejudice.

**B.     Undue Delay**

Denying leave to amend on the basis of undue delay is disfavored "[w]here there is a lack of prejudice to the opposing party and the amended complaint is obviously not frivolous, or made as a dilatory maneuver in bad faith." United States v. Pend Oreille Pub. Util. Dist. No. 1, 926 F.2d 1502, 1511 (9th Cir. 1991) (quoting Howey v. United States, 481 F.2d 1187, 1190-91 (9th Cir. 1973)). "[D]elay alone no matter how lengthy is an insufficient ground for denial of leave to

amend." Webb, 655 F.2d 977, 980.

As discussed *supra*, the Appearing Defendants have shown no evidence that they would suffer prejudice as a result of the proposed amendments, that the new claim is frivolous, or that Pineida has acted in bad faith. Although the case has been pending for more than two years, no trial or pretrial conferences dates have been set. See DCD Programs, 833 F.2d at 188 (finding no unjust delay or resulting prejudice to the party opposing amendment where the "case is still at the discovery stage with no trial date pending, nor has a pretrial conference been scheduled").Original Defendants have therefore not shown that they would suffer undue delay if Pineida is allowed to amend his complaint.

**C.     Futility**

"[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." Vietnam Veterans of Am. v. C.I.A., 288 F.R.D. 192, 219 (N.D. Cal. 2012) (quoting Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988)). "[D]enial [of a motion to amend] on this ground is rare and courts generally defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." Clarke v. Upton, 703 F. Supp. 2d 1037, 1043 (E.D. Cal. 2010) (citing Netbula, LLC v. Distinct Corp., 212 F.R.D. 534, 539 (N.D. Cal. 2003)).

The Appearing Defendants argue that the PSAC fails to state an Eighth Amendment claim against the newly Proposed Defendants. Mot. at 3. They also argue that Pineida has not alleged a viable First Amendment retaliation claim against all defendants. Id. at 7. The court addresses each argument in turn.

### 1.     Deliberate Indifference - Proposed Defendants

In order to establish a deliberate indifference claim under the Eighth Amendment, Pineida will have to show (1) he suffered a sufficiently serious deprivation; and (2) the Defendants carried out this deprivation while deliberately indifferent to his plight. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To make out a deliberate indifference claim, a plaintiff must show that Defendants were aware that the plaintiff was at a substantial risk of serious harm and did not reasonably

7

address that risk.  Id. at 846.  Deliberate indifference includes denying, delaying, or intentionally interfering with a prisoner's medical treatment.  Hunt v. Dental Dep't., 865 F.2d 198, 201 (9th Cir. 1989).

Plaintiff acknowledges that the Proposed Defendants all allegedly took positions at SVSP after Pineida filed his original complaint in 2012.  Mot. at 4.  Therefore, the only allegations that can reach the Proposed Defendants are those that occurred between the Proposed Defendants' various starting dates in 2012 and the filing of the PSAC in April 2014.  Pineida also acknowledges that the Proposed Defendants did not directly provide or deny Plaintiff medical care.  Plaintiff proposes to name the Proposed Defendants since they are responsible for medical care at SVSP, and he alleges that they were either aware of the Eighth Amendment violations and allowed them to continue, created or participated in creating the policies under which the Eighth Amendment violations occurred, and/or exhibited gross negligence in supervising subordinates providing Plaintiff's care.  PSAC ¶¶ 83(a) & (g), 84.

"A supervisor is liable under § 1983 for a subordinate's constitutional violations 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'"  Maxwell v. Cnty. of San Diego, 708 F.3d 1075, 1086 (9th Cir. 2013) (quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989)).  Supervisory liability can also exist when there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation," such as when "supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (quoting Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1987));  see also Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 ("A plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates.").  In his papers, Plaintiff states that "the liability of the Additional Defendants is premised not on their direct personal participation, but rather on their creation and implementation of policies leading to the constitutional violations and their knowledge [of] and acquiescence in the violations."  Reply Brief at 5, ECF No. 5.

8

Defendants correctly point out that every "dated" example of alleged unconstitutional mistreatment in the PSAC occurred before the Proposed Defendants began working at SVSP. Opp. at 6. There are, however, several "undated" allegations that plausibly reach the Proposed Defendants. For instance, Pineida alleges that he experienced gaps in medical treatment wherein his prescriptions were not renewed or properly adjusted. PSAC ¶55. This allegedly occurred "throughout his time at SVSP," which would include the time Proposed Defendants have been in their current employment. Id. Pineida then avers that he appealed this mistreatment without result. Id. ¶56. Later, Pineida states that he requested adjustment of his diet to accommodate his post-surgical condition "throughout his time at SVSP" and that "SVSP officials, including Defendants, repeatedly denied these requests." Id. ¶ 68. Finally, Pineida alleges that "over the past two years, Defendants intermittently withheld the nutrient-rich shakes . . .." Id. ¶80.

All of the above cited references in the PSAC suggest that SVSP could have had a policy, during the time the Proposed Defendants supervised it, of declining to provide the care and diet necessary to relieve Plaintiff of very serious pain, and that the Proposed Defendants knew of the alleged mistreatment Plaintiff suffered from the implementation of those policies. If proven, this allegation could state a claim against the Proposed Defendants. The court cannot conclude that "no set of facts" could be proved under the PSAC that would amount to a valid Eighth Amendment claim against the Proposed Defendants, and so amendment cannot be denied on the grounds of futility.

### 2. Retaliation - All Defendants

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

"In this context, and at the pleading stage," a litigant is not required, "*per impossibile*, to demonstrate a *total* chilling of his First Amendment rights to file grievances and to pursue civil rights litigation in order to perfect a retaliation claim." Id. at 568 (emphasis in the original).

"Speech can be chilled even when not completely silenced." Id.

Pineida has sufficiently alleged acts that could plausibly create a chilling effect on his speech. PSAC ¶ 90. Pineida alleges myriad adverse actions taken against him over his nine-year stay in SVSP. See PSAC ¶¶ 47, 51, 63, 65. Pineida alleges such actions were deliberate derelictions of Defendants' duties taken in response to his pursuing his complaints, and Defendants do not argue that the alleged actions were reasonably advancing a legitimate correctional goal. Id. ¶82.

The asserted futility of Pineida's First Amendment claims, against both Original Defendants and Proposed Defendants, thus depends on whether any alleged facts plausibly demonstrate a nexus between Pineida's exercise of his First Amendment rights and the alleged conduct of Defendants.

A prisoner's First Amendment rights include the right to file prison grievances and to pursue civil litigation. Rhodes, 408 F.3d at 567. In pleading retaliatory intent, "allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012).

For the Original Defendants, the PSAC sufficiently pleads a chronological link between the time Plaintiff filed complaints and appeals and his alleged mistreatment. Pineida alleges that Rodriguez, Millner, and Wall told Pineida he had a surgical consultation pending when in fact it was lost, and alleges that these actions were motivated by Pineida's earlier appeal for surgery. PSAC ¶¶ 43-45. Pineida alleges that Lee summarily dismissed Pineida's appeals for a diet that wouldn't aggravate his condition. Id. ¶67. Sepulveda was chief medical officer from 2009 to 2011, and was responsible for denying Pineida the special shakes. Id. ¶ 69. Pineida alleges instances in which Sepulveda revoked or rejected the dietary plans Pineida's treating physicians ordered as part of his treatment. Compl. ¶¶ 54, 60-62 (incorporated by reference into the PSAC pursuant to PSAC ¶37). All of these actions occurred shortly after Plaintiff's appeals and complaints were filed. Pineida has therefore alleged a nexus between exercising his First Amendment rights and his mistreatment.

For the Proposed Defendants, a similar chronological link exists between Pineida's actions

1   and Proposed Defendants alleged malfeasance.  Pineida alleges that his filing of the instant

2   lawsuit, along with his *pro bono* counsel's communications with Defendants, immediately

3   preceded his again being denied the nutritional shakes and medicine he had been given in the past.

4   PSAC ¶¶ 78-80.

5         Construed in favor of Pineida, these allegations set forth a chronology from which it is

6   plausible to infer that Defendants retaliated against him for appealing and pursing civil litigation.

7   The court cannot conclude that it would be futile to allow amendment of the complaint to add a

8   First Amendment retaliation cause of action.

### 3.    Defendants' Official Capacities

10         Defendants also argue that the amendment would be futile insofar as it brings claims

11   against Defendants in their official capacities.  Mot. at 11.  The PSAC sues Defendants in their

12   individual and official capacities seeking injunctive and monetary relief.  PSAC ¶18.  Defendants

13   move to dismiss all claims against them in their official capacities.  Mot. at 11.

14         The court already "dismissed with prejudice" all "claims against defendants in their official

15   capacities for money damages."  June 2013 Order at 9.  The court does not understand Plaintiff to

16   be seeking to reinstate any such claims, or to bring them anew against the Proposed Defendants.

17   See Reply at 16 ("[Plaintiff] seeks money damages from Defendants for his claims against them in

18   their individual capacities and equitable relief with respect to his claims against them in their

19   official capacities").

20         As the court stated in its previous order, to the extent Pineida's surviving claims for

21   damages are brought against Defendants in their individual capacities, such claims are unaffected

22   by this ruling.  Further, to the extent Pineida's surviving claims for injunctive relief are brought

23   against defendants in their individual and official capacities, such claims are also unaffected by

24   this ruling.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n.10 (1989) ("A state

25   official in his or her official capacity, when sued for injunctive relief, [is] a person under § 1983

26   because official-capacity actions for prospective relief are not treated as actions against the

27   State.") (internal quotations and citation omitted).

28

11

### 4. **Exhaustion**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Proposed Defendants assert that Pineida has failed to show that he exhausted his administrative options before turning to litigation. Mot. at 12.

The court previously addressed the exhaustion allegations in the initial complaint and found that they were sufficient to preclude dismissal at the pleading stage. June 2013 Order, at 8-12. The court applied then-current precedent that exhaustion could be asserted in "an unenumerated Rule 12(b) motion rather than [in] a motion for summary judgment." Id. (quoting Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003)).

Since that order, an *en banc* panel of the Ninth Circuit overruled Wyatt and made it considerably more difficult for defendants to assert PLRA exhaustion at the pleading stage. "In a few cases, a prisoner's failure to exhaust may be clear from the face of the complaint," but "such cases will be rare because a plaintiff is not required to say anything about exhaustion in his complaint." Albino v. Baca, 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc). "Failure to exhaust under the PLRA is 'an affirmative defense the defendant must plead and prove,'" and is usually considered at summary judgment rather than at the pleading stage. Id. at 1166 (quoting Jones v. Bock, 549 U.S. 199, 204 (2007)).

Here, the complaint plainly alleges that Pineida has exhausted his administrative options. PSAC ¶78, n.1. Defendants provide no reason to conclude, consistent with Albino, that nonexhaustion is so clear from the face of the PSAC that leave to amend should be denied. Nor do they explain why, even under the pre-Albino standard, the court should revisit its earlier conclusion that the exhaustion was adequately demonstrated in the initial complaint.

### D. **Rule 20**

Defendants claim that adding Proposed Defendants to Pineida's claim would be a violation of rule 20 of the Federal Rules of Civil Procedure. Mot. at 14.

Under Rule 20(a)(2), permissive joinder of defendants is proper if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the

12

same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Under the joinder rules, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966). Rule 20's authorization of permissive joinder "is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency, 558 F.2d 914, 917 (9th Cir. 1977).

Construed liberally, Pineida's claims satisfy these requirements. The basis of the complaint against all defendants, original and new, concerns the allegedly systematic mistreatment of Pineida by SVSP staff. The facts regarding that alleged mistreatment will be pertinent to every defendant. It would not be a fair or efficient use of judicial resources to require Plaintiff to file a separate lawsuit against the Proposed Defendants for very similar complaints about his ongoing problems with medical care at SVSP. Joining Proposed Defendants to the complaint is therefore proper under Rule 20.

### E.  Defendant Millner

By naming Defendant Millner in the PSAC, Plaintiff effectively seeks to make Millner again a party to this lawsuit notwithstanding his earlier dismissal under Rule 4(m). Since Rule 4(m) dismissals are without prejudice, since this motion was made before the deadline to add parties, and since Rule 15 is liberally construed, the court finds it appropriate to permit Plaintiff to re-assert his claims against Defendant Millner.

### F.  Request to Strike

In their opposition brief, the Original Defendants argue that the court should strike certain portions of the PSAC pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Opp. 18-19. A party may not make a motion to strike in an opposition brief. Moreover, Rule 12(f) applies only to pleadings, not proposed pleadings.

However, to avoid unnecessary future motion practice, the court can advise the parties that none of the challenged averments are properly subject to a motion to strike. To fall within the

scope of Rule 12(f), the material sought to be stricken must be either (1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous.

The Original Defendants argue that the first exhibit to the PSAC, an expert study of SVSP's ability to provide medical care to its inmates, should be stricken because it is "aimed at gaining sympathy for Pineida" and does not portray the Original Defendants in a kind light. Opp. at 18-19. This report mentions all four of the newly proposed defendants by name, and concerns SVSP's systematic issues providing adequate healthcare to its inmates during a period that overlaps with Pineida's alleged mistreatment. Exh. A to PSAC at 5, 8-9. The report is not redundant, immaterial, impertinent, or scandalous.

Original Defendants also argue that the fact that Pineida and his attorneys have been in dialogue with SVSP prison officials should be stricken. Opp. at 19. This also does not seem to be redundant, immaterial, impertinent, or scandalous.

As discussed *supra,* court agrees, and does not understand Plaintiff to dispute, that under the Eleventh Amendment, Plaintiff may not bring a claim for money damages against Defendants acting in their official capacities. Plaintiff should clarify that fact before filing the proposed amended complaint.

## III. CONCLUSION

For the foregoing reasons, Pineida's motion for leave to amend, ECF No. 86, is GRANTED. Since the Appearing Defendants' motion for summary judgment, ECF No. 64, is at least partially mooted by the filing of an amended complaint, that motion is DENIED WITHOUT PREJUDICE.

Dated: June 26, 2014

JON S. TIGAR
United States District Judge

14