FILED

SEP 25 2014

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIEL PINEIDA,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES D. LEE, et al.,<br><br>Defendants. | Case No. 12-cv-01171-JST<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION**<br><br>Re: ECF No. 138 |

## I.   INTRODUCTION

Before the Court is a motion for preliminary injunction filed by Gabriel Pineida, an inmate at Salinas Valley State Prison ("SVSP"). Pineida suffers from ulcerative colitis, "a chronic disease of the colon that causes inflammation and sores, called ulcers, in the inner lining of the colon." Declaration of Dr. Hammerman ("Hammerman Decl."), ECF No. 143-3, ¶ 3. Pineida seeks an order directing SVSP to provide him with a low fiber diet and "no fewer than two cans of nutritional shakes per day designed for meal supplementation." ECF No. 138-19, ¶ 7.

## II.   BACKGROUND

### A.   Factual Allegations

Following his diagnosis with ulcerative colitis in 2003, Pineida experienced years of symptoms including "severe abdominal pain and cramping, bloody diarrhea, fatigue, and significant weight loss." Declaration of Gabriel Pineida ("Pineida Decl."), ECF No. 138-2, ¶ 3. In 2008, Pineida underwent an emergency colectomy procedure, during which a portion of his colon was removed. Id. at ¶ 4. As part of the procedure, surgeons created a hole in Pineida's abdomen through which waste would involuntarily pass into a colostomy bag, which then had to be emptied regularly. Declaration of Jeffrey Rothman, ECF No. 138-1, ¶ 14.

In 2010, Pineida underwent a J-pouch procedure, which is the "preferred procedure following a colectomy," in which the "bottom of the small intestine is doubled into a 'J' shape to create a small pouch" allowing the patient to excrete waste through the anus. Rothman Decl. ¶ 15. Following the J-pouch procedure, Pineida was instructed by his physician to maintain a low fiber diet in order to lower bowel activity and "prevent blockage or obstruction of the pouch." Pineida Decl. ¶ 7; Rothman Decl. ¶ 17. Pineida was warned that he could develop pouchitis, "a chronic, long-term condition in which the lining of the pouch becomes inflamed or irritated." Rothman Decl. ¶ 22. Pineida was also advised that he should supplement his food intake with nutritional shakes to ensure that he received sufficient nutrients and caloric intake despite his dietary limitations. Pineida Decl. ¶ 7; Rothman Decl. ¶ 21.

Following his surgery, prison officials provided Pineida with a pamphlet produced by the California Correctional Health Care Services, which instructed him that "[t]he prison food service staff is not required to provide you with any special food substitutions. Avoiding the problem foods is your responsibility." ECF No. 138-4. The pamphlet claimed that "[t]he meals prepared in your prison are adequate to meet your dietary needs," but warned that "[i]f a certain food bothers you, do not eat it at all." Id.

Pineida found that the meals prepared for the general prison population contained many foods which caused him pain and discomfort due to his condition. He requested that prison officials provide him with an individualized low fiber diet, supplemented with nutritional shakes. Pineida's request was denied and he was informed, following an Inmate Health Care Appeal, that "SVSP does not have special diets for which you meet the criteria." ECF No. 138-6. The denial was upheld at two further levels of internal appeal. Id.

Pineida alleges that, because of SVSP's failure to provide him with a low fiber diet, he suffers from symptoms of pouchitis, including irritation of his J-pouch, severe cramping that impairs his mobility, bloody and uncontrollable diarrhea, and persistent hunger due to his inability to eat many of the foods provided on the general prison menu. Pineida Decl. ¶ 20. Pineida's symptoms are not disputed. Although SVSP provided Pineida with supplemental nutritional shakes for a period of time, they stopped providing them to him on March 22, 2014. On June 3,

2014, SVSP resumed providing Pineida with supplemental shakes, although the shakes provided after this date were shakes "intended for diabetics," which Pineida reports cause him "irritation, discomfort, and a burning sensation." Id. at ¶ 21.

### B. Jurisdiction

This court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, because Plaintiff's Section 1983 claims arise under federal law.

### C. Legal Standard

A plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Associations, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir.2009) (quoting Winter v. Nat. Resources Defense Council, 555 U.S. 7, 20 (2008)). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22.

To grant preliminary injunctive relief, a court must find that "a certain threshold showing is made on each factor." Leiva-Perez v. Holder, 640 F.3d 962, 966 (9th Cir. 2011). Provided that this has occurred, in balancing the four factors, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

## III. ANALYSIS

### A. Likelihood of Success on the Merits

Pineida claims that prison officials' deprivation of a low fiber diet and supplemental nutrition shakes to an inmate suffering from severe ulcerative colitis states a claim under the Eighth Amendment for deliberate indifference to a prison inmate's serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Establishing a violation of the Eighth Amendment requires a two-part showing." Foster v. Runnels, 554 F.3d 807, 812 (9th Cir. 2009). An inmate

3

must first show that he was deprived of something "sufficiently serious." Id. (internal quotations and citations omitted). "The inmate must then make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." Id.

### 1. "Sufficiently Serious"

"A deprivation is sufficiently serious when the prison official's act or omission results in the denial of the minimal civilized measure of life's necessities." Id. (internal quotations and citations omitted). "Adequate food is a basic human need protected by the Eighth Amendment." Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996). While prison food need not be "tasty or aesthetically pleasing," it must be "adequate to maintain health." Id. (quoting LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993)).

Pineida has submitted evidence that the food provided by SVSP does not meet his dietary needs, as it contains many high fiber foods which, if consumed, would inflame the symptoms of his pouchitis and cause him severe pain. SVSP's refusal to provide a low fiber diet has forced Pineida to choose between consuming food that inflames his symptoms or going hungry in light of the lack of low fiber options. Pineida cites to several persuasive cases which have concluded that a failure to provide a medically-recommended diet to an inmate constitutes a sufficiently serious deprivation to state an Eighth Amendment claim. See Mandala v. Coughlin, 920 F. Supp. 342 (E.D.N.Y. 1996) (prison's failure to provide low fiber diet following colostomy stated a claim), Woulard v. Food Service, 294 F. Supp. 2d 596 (D. Del. 2003) (failure to provide diet of six small meals a day to Crohns' sufferer stated a claim), Johnson v. Harris, 479 F. Supp. 333, 339 (S.D.N.Y. 1979) (failure to provide special diet for diabetic forced prisoner "into the draconian choice between jeopardizing his health by eating, or suffering, like Tantalus, the punishment of being shown food that he cannot eat" and therefore stated a claim).

Defendants argue that, although Pineida does not receive an individualized low fiber diet supplemented by nutritional shakes, Pineida could meet his nutritional needs by consuming only those foods on the regular prison menu that are low in fiber. In Foster, the Ninth Circuit found a deprivation of food to be "sufficiently serious" when a prisoner was "denied 16 meals in 23 days." 554 F.3d at 812. Based on a schedule of three meals a day, this means that the plaintiff in Foster

was deprived of 16 out of 69 meals that he should have been provided during this period. Pineida has submitted menus of the food served at SVSP, with the food items that inflame his symptoms struck through in red. ECF No. 138-7. These annotated menus indicate that Pineida is able to consume less than half of the food provided to the general prison population. At many meals, even the aggregate of the items that Pineida could consume comfortably would be considered a snack at best. Because the Ninth Circuit found a violation in Foster, where a prisoner was deprived of fewer than one fourth of his meals during a finite 23 day period, the Court has little difficulty concluding that providing a prisoner with only half as many food options as those available to other prisoners for an indefinite period constitutes a sufficiently serious deprivation to state a claim under the Eighth Amendment.

Defendants note that "Pineida has been able to maintain a body weight within the range of a normal weight for his height." Hammerman Decl. ¶ 11. Certainly, this fact is for the good, since if Pineida's weight had fallen to an unhealthy level his health challenge would be even more severe. The primary issue is not Pineida's weight, however, but the ongoing, painful, and severe symptoms he experiences when SVSP provides food that his digestive system cannot tolerate. These symptoms, which are at the core of Pineida's motion, are not disputed by Defendants.

Because Pineida has shown that over half of the food items provided to him cause him to experience severe pain if consumed, he has shown a likelihood of success in demonstrating a sufficiently serious deprivation.

### 2. Deliberate Indifference

In Estelle, the Court made clear that negligent conduct on the part of prison officials was insufficient to establish a claim for deliberate indifference; instead "a prisoner must allege that acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. "However, the Supreme Court has also recognized that while 'deliberate indifference' under Estelle requires more than a showing of mere negligence, 'something less than [a showing of] acts or omissions for the very purpose of causing harm or with knowledge that harm will result' will suffice." Mandala v. Coughlin, 920 F. Supp. 342, 353 (E.D.N.Y. 1996) (citing Farmer v. Brennan, 511 U.S. 825, 825 (1994)).

5

Pineida has provided compelling evidence that prison officials knowingly refused to provide him with the diet recommended by doctors following his J-pouch procedure. Pineida has included documentation of the denial of his Health Care Services appeal by prison officials. During this appeal, Pineida provided the officials with a December 2011 "Discharge Summary" from his primary care physician instructing "the patient must adhere to a strict low residue diet to prevent further episodes of obstruction in the future as well as malnutrition as high-fiber foods will not be absorbed by his small intestine." ECF 89-2 at 14. Prison officials have been made even more aware of Pineida's suffering as a consequence of this lawsuit. Notwithstanding their awareness, however, Defendants have still refused to provide Pineida with the alternative diet that he needs. Pineida has demonstrated that Defendants have consciously disregarded a risk to Pineida's health.

### B. Irreparable Harm

A party seeking a preliminary injunction must demonstrate that "irreparable injury is *likely* in the absence of an injunction." Winter, 555 U.S. at 22. Pineida argues that the continued deprivation of a low fiber diet and supplemental shakes causes him avoidable pain. Under Ninth Circuit law, "constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm." Nelson v. Nat'l Aeronautics & Space Admin., 530 F.3d 865, 882 (9th Cir. 2008) rev'd on other grounds, 562 U.S. 134 (2011). Because the Court has concluded that Pineida has shown a likelihood of success on the merits in demonstrating a violation of his Eighth Amendment rights, he has also demonstrated a likelihood of irreparable injury in the absence of an injunction.

Defendants argue that Pineida has not shown a likelihood of irreparable harm because, even with a low fiber diet, he is likely to continue to suffer *some* pain as a result of the chronic nature of his ulcerative colitis. Defendants' argument misses the point. Pineida does not argue that Defendants' must ensure that his life is free of *all* pain; he only seeks a diet which mitigates *avoidable* pain. Furthermore, Defendants' have not established that Pineida's pain would not be substantially decreased by his proposed low fiber diet. In fact, the declaration submitted by Defendants' own expert actually acknowledges that "a low fiber diet would decrease symptoms of

gas and cramping related to indigestible material passing through narrowed areas of small intestine," and a higher fiber diet causes an increase in bowel movements and "more gas and cramping." Hammerman Decl. ¶ 8-9. Indeed, given that their own expert agrees with Pineida's fundamental claim, it is difficult to see why Defendants have not already voluntarily provided Pineida with the diet he and his doctors have requested.

Because SVSP's failure to provide Pineida with a low fiber diet violates his constitutional rights and causes him pain that could be avoided by the issuance of an injunction, Pineida has demonstrated irreparable injury.

### C.  Balance of Equities

Pineida's argument regarding the hardship he faces is compelling. Like all prison inmates, Pineida depends on prison officials to provide him with "adequate sustenance on a daily basis." Foster, 554 F.3d at 814. Currently, many of the food options prison officials provide to him cause him considerable pain. Denying this injunction would perpetuate Pineida's ongoing suffering.

Defendants' hardship arguments are considerably less compelling. Defendants argue that a preliminary injunction would create confusion and "unnecessary court intervention." Defendants' Opposition ("Opp."), ECF No. 143 at 6. In particular, Defendants balk at Exhibit A to Pineida's proposed order for preliminary injunction, which includes a suggested list of "acceptable" and "prohibited foods." ECF No. 138 at 5-6. Defendants claim that Pineida "seeks this Court to ban" food items which "may typically be included in a lower-fiber diet," thereby restricting Pineida's "access to a variety of acceptable food items." ECF No. 143 at 6. Defendants also argue that Pineida's proposed order is a gambit "designed to cause a violation" that would lead to further court intervention, because Pineida includes on his prohibited foods list dishes that Defendants claim are composed only of other foods listed on his "acceptable foods" list. Id.

The Court is not persuaded by Defendants' hardship arguments. Although certain foods on Pineida's proposed "prohibited foods" list may be typically be consumed by patients on a low fiber diet without causing pain or discomfort, Pineida has submitted evidence that "each person's digestive system is different" and will respond to ulcerative colitis in different ways. Rothman Decl., ¶ 19. Defendants make no argument that the food items on Pineida's "acceptable foods" list

7

are prohibitively expensive or would require SVSP to order items not otherwise in stock. Indeed, Pineida has submitted copies of the menus detailing the meals served at SVSP from January 27, 2014 through April 13, 2014. ECF No. 138-7. These menus demonstrate that SVSP already carries Pineida's requested "acceptable foods," however, because of the way that meals are typically prepared for the general prison population, only about half of the items on a daily menu are acceptable for consumption by Pineida. This requires Pineida to choose between either "eating foods that cause him pain or and discomfort, or going hungry." ECF No. 138, ¶ 6. Requiring SVSP to provide to Pineida on a more regular basis those foods it already has on hand is a minor hardship.

The Court is likewise unconvinced that Pineida's requested injunction is in any way calculated to cause a violation. Pineida's requested relief is not at all opaque: he wants to eat food that will not cause him to be in constant pain. His proposed order clearly delimits the food items that he can tolerate and those which he cannot. Pineida allows that the Court could simply issue a general injunction directing the provision of a low fiber diet, but notes that the specificity of his proposed order will help to lessen the burden of compliance on SVSP. The Court agrees.

Defendants' also argue that the "prohibited foods" list contains meals, such as chicken cacciatore, which are composed entirely of foods on Pineida's "acceptable foods" list and thus should not upset Pineida's stomach.[1] ECF No. 143 at 6-7. These arguments are speculative at best. Even though Defendants retained the services of a physician to oppose this motion, ECF No. 143-3 (Hammerman Decl.), their arguments about what foods Pineida "should" be able to eat are supported by a Correctional Food Manager rather than by any competent medical evidence. Particularly given the absence of any evidence of hardship to SVSP, there is no reason for Defendants to jury-rig substitutions to Pineida's acceptable foods list when they can instead simply follow it. Even if Defendants are convinced that Pineida might like chicken cacciatore if he just gave it a chance, they can simply not serve Pineida chicken cacciatore and instead serve him the food items listed on his "acceptable foods" list. This does not present any hardship.

---

[1] Pineida responds that the "spices and oils" in chicken cacciatore upset his stomach.

The balance of hardships tips heavily in favor of granting Pineida the injunctive relief that he seeks.

### D.      Public Interest

Defendants make no argument that granting Pineida an injunction would harm the public interest. Moreover, any such argument would be unsuccessful, as "it is always in the public interest to prevent the violation of a party's constitutional rights." Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (citations and internal quotations omitted).

## IV.     CONCLUSION

For the reasons discussed above, the Court finds that Plaintiff has met all of the elements that must be established in order to prevail on a request for preliminary injunctive relief. Specifically, he has shown: 1) that serious questions going to the merits of his claim have been raised; 2) he is likely to suffer irreparable harm in the absence of preliminary relief; 3) the balance of hardships tips sharply in his favor; and 4) an injunction is in the public interest. Winter, 555 U.S. at 20; Alliance for the Wild Rockies, 632 F.3d at 1131.

Therefore, the Court hereby GRANTS Plaintiff's request for preliminary injunction. Defendants Grounds, Marshall, Adams, and Bright and all other persons or entities acting or purporting to act for them or on their behalf, and any and all persons and entities in active concert and participation with Defendants who receive notice of this Order, shall be and hereby are ORDERED to:

a.      Provide Pineida with a diet consisting of at least 2,000 calories per day that is low in fiber as ordered by his physicians, dieticians, and/or nutritionists, and as specified in the attached Exhibit A; and

///
///
///
///
///
///

      b.    Provide Pineida with no fewer than two cans of nutritional shakes per day designed for meal supplementation (rather than management of diabetes or any inapplicable medical condition).

**IT IS SO ORDERED.**

Dated: September 25, 2014

                                            JON S. TIGAR
                                            United States District Judge

**Exhibit A to Preliminary Injunction Order**

**PROHIBITED FOODS:**

- High fiber grain products (*e.g.*, dinner roll, graham crackers, English muffin)
- Hot or dry cereal (*e.g.*, grits, cornmeal, hot rice with cinnamon)
- Corn or cornmeal products (*e.g.*, corn tortillas, cornbread)
- Cinnamon roll
- Canned fruit (including apples or pineapple)
- Fruit juices that include pulp or fiber
- Apples
- Egg yolks or scrambled eggs
- Peanut butter
- Brown rice
- Spanish rice with spices or chili pepper
- Spices and spicy condiments (*e.g.*, mustard, relish, taco sauce, ketchup, salsa, taco or enchilada sauce, tartar sauce, hot sauce, cinnamon, barbeque sauce)
- Nuts and seeds, trail mix, corn nuts
- Raw or cooked vegetables (*e.g.*, carrots, broccoli, bell peppers, cabbage, onions, celery, coleslaw, )
- Beans and bean products (*e.g.*, baked beans, chili beans, pinto beans, red beans, Mexican beans, refried beans, three bean salad)
- Spicy meats (*e.g.*, sausage, hot links, salami, hot dogs, chorizo)
- Greasy meat dishes or sauces (*e.g.*, gravy, sloppy joe, chicken cacciatore, spaghetti with meat sauce, enchiladas, shepherd's pie, cream beef, chicken cheese supreme, chicken chop suey, tamale pie, egg roll, fried rice, goulash on noodles, chicken tetrazzini, beef hash, chicken parmesan sandwich, beef cabbage casserole, beef or chili macaroni and cheese, chicken alfredo with broccoli, chicken fajita)
- Foods that combine any of the above listed items (*e.g.*, breakfast pocket, tuna or barbeque calzone, bean burritos, bagel dog)

**ACCEPTABLE FOODS INCLUDE:**

- White bread products (*e.g.*, flour tortillas, plain crackers or saltines, danish pastry, hoagie rolls, hot dog or hamburger buns, biscuit, plain pasta, pancakes, waffles, macaroni and cheese, French roll)
- Bananas, and/or melons
- Egg whites (*e.g.*, boiled eggs)
- Cheese or cottage cheese
- Non-spicy condiments (*e.g.*, jelly without seeds or fruit bits, syrup, mayonnaise)
- Plain, well-cooked meats or fish without sauce or gravy (*e.g.*, roast turkey, roast beef, lunchmeats, beef patty, fish filet, baked chicken without skin, turkey ham, PIA-brand entrees)
- Vegetarian pizza
- Spaghetti with marinara sauce
- Steamed or cooked white rice, or Spanish rice with no spices or chili pepper
- Potatoes (*e.g.*, mashed potatoes, baked potatoes, scalloped potatoes, oven baked potato

wedges, hash brown potatoes, tri-tater potatoes, steamed potatoes, chips, potato salad)
- Cookies, cake, pudding, or ice cream/sherbet